PER CURIAM.
M.A. challenges his commitment to a level 8 program. Finding that the circuit court had jurisdiction over appellant at the time of the commitment, we affirm.
On August 18, 2004, M.A. entered pleas of guilty or no contest in eight cases. He was adjudicated delinquent and placed in a Level 6 moderate risk commitment. The preprinted, form disposition order stated:
The placement is for an indeterminate period, but no longer than 5 years or the child’s 19th birthday, or as expected in section 985.201(4)(b) 1 and 2, whichever comes first.[1]
Upon release, the child shall be placed on post-commitment probation, or conditional release, including, but not limited to minimum risk non residential programs status under the conditions specified in this order.
While waiting for placement in a Level 6 commitment, M.A. was placed on home detention. He absconded from home detention and was subsequently taken into custody. Later, in September, 2004, he was admitted to Falkenburg Academy, a moderate-risk program, where he resided until May 19, 2005. During M.A.’s stay at Falkenburg, he was not on task with his program, conflicted with authority, and did not meet his behavioral objectives. Nonetheless, on May 19, M.A.’s father picked him up to begin a conditional release transition program.
M.A. soon absconded from the supervision of the conditional release program. He failed to appear at a June 1, 2005 restitution hearing and was later taken into custody. After being released, he absconded from a reentry program and was arrested for a new charge on September 10, 2005. On September 28, 2005, the reentry program requested a transfer of M.A. to a high risk facility, “where [M.A.’s] behavioral issues could be addressed to help him deal with his erratic behavior at home, school and in the community.” The Department of Juvenile Justice (DJJ) specified ■ four reasons for making the transfer request: (1) M.A. “failed to comply with the curfew goal of his Reentry Supervision Plan to maintain curfew and positive behavior at home and in the community;” (2) M.A. “failed to comply with the goal to obtain and maintain employment;” (3) M.A. “failed to comply with the goal of maintaining a drug free life style and not associating with known substance users and/or sellers,” and (4) M.A. violated the law, as evidenced by his August arrest for possession of cocaine and his September arrest for grand theft auto. On October 7, 2005, the trial court signed the order approving MA’s transfer to the high risk facility.
Meanwhile, on the charges arising from his September 10 arrest, M.A. was held in the Broward County Jail as an adult for over 200 days. On April 20, 2006, he pleaded guilty to the crimes of aggravated fleeing and eluding, grand theft, resisting without violence, trespass of a conveyance, and operating a vehicle without a valid driver’s license and was sentenced to youthful offender probation.
M.A. returned to juvenile court on May 3, 2006 on the issue of whether the court would set aside his transfer to the high risk commitment program that was ordered in October, 2005, while M.A. was in jail on adult charges. On behalf of the reentry program, a witness from the reentry program explained the reason for the transfer request:
He wasn’t complying. He was re-arrested ... he didn’t comply with curfew. He did — wasn’t looking for a job. I *382 mean, he wasn’t available for me to see when I needed him, which is why we went ahead and filed for the transfer.
At the conclusion of the May 3 hearing, the juvenile court considered the extent of M.A.’s juvenile record, denied the motion to release him, and ordered that he attend and complete the level 8 program.
DJJ alerted the court that M.A. turned 19 on May 15, 2006. The court scheduled a hearing on May 30. M.A. argued that he should be released because he had turned 19. The state contended that section 985.231, Florida Statutes (2004), gave the court jurisdiction over M.A. until he turned 21. The court refused to set aside the level 8 commitment. In a written order, the juvenile court explained its ruling:
This court did not sentence the child to a level eight (8) program (High Risk). The child was internally transferred to a high risk program after violating the terms of his conditional release. This court ultimately ‘approved’ said transfer and refused defense counsel’s request to allow the child to terminate his commitment after he had turned nineteen (19) years of age.
M.A.’s main point on appeal is that the juvenile court lost jurisdiction of him on his 19th birthday because it was “bound by the terms of the disposition order with regard to the extent” of its jurisdiction.
“Subject matter jurisdiction is ‘the power of the court to adjudicate the class of cases to which the particular ease belongs.’ ” Partridge v. Partridge, 790 So.2d 1280, 1284 (Fla. 4th DCA 2001) (quoting VL Orlando Bldg. Corp. v. AGD Hospitality Design & Purchasing, Inc., 762 So.2d 956, 957 (Fla. 4th DCA 2000) (quoting Crill v. State Road Dep’t, 96 Fla. 110, 117 So. 795, 798 (1928))). “Jurisdiction of the juvenile court is limited to that mandated by statute.” Cesaire v. State, 811 So.2d 816, 817 (Fla. 4th DCA 2002). The difficulty with Chapter 985 is that different statutes provide different jurisdictional time limits. Thus, section 985.201(4)(a), Florida Statutes (2004), states a general rule that “[jurisdiction of the court terminates when the child attains the age of nineteen.” Id. However, section 985.231(l)(a)(3), which provides courts with disposition authority in delinquency cases, gives a circuit court jurisdiction over an “adjudicated delinquent” “until the child is discharged by the Department or until he or she reaches the age of twenty-one.” S.L.K. v. State, 776 So.2d 1062, 1065 (Fla. 4th DCA 2001). A trial court’s order is not “defective for failing to explicitly state the limitations of the trial court’s jurisdiction over” a juvenile. See M.S. v. State, 946 So.2d 1136, 1138 (Fla. 4th DCA 2006).
Here, M.A. was sentenced under section 985.231(l)(a)(3), which provides that “the term of the commitment must be until the child is discharged by the department or until he or she reaches the age of 21.” (Emphasis added). A commitment under this section is to the DJJ. The term of commitment is mandatory; it cannot be shortened by a court order. Jurisdiction of the court extends until a juvenile is discharged by the department or until age 21, whichever occurs first. The court’s jurisdiction over M.A. continued beyond his nineteenth birthday.
In this case, M.A. was never discharged by the Department. As authorized by the statute, appellant was released into a “po-stcommitment nonresidential conditional release program.” Id. Because appellant was “not successful in the conditional release program,” the Department used the “transfer procedure under s. 985.404.” Id. Section 985.404(4) allows the Department to transfer a child from one program to another facility or program; the section requires the Department to notify the *383 “court that committed the child to the department and any attorney of record, in writing, of its intent to transfer the child from a commitment facility or program to another facility or program of a higher or lower restrictiveness level.”
Contrary to appellant’s arguments, it was not necessary to hold a probation revocation hearing before a transfer because appellant was originally committed to the Department and not placed on probation. Indeed, probation is defined as a legal status imposed “in lieu of commitment to the custody of the Department of Juvenile Justice.” § 985.03(43), Fla. Stat. (2004). “Commitment!,] and a probation program that is supposed to be in lieu of commitment!,] are mutually exclusive.” Dep’t of Juvenile Justice v. K.B., 784 So.2d 556 (Fla. 1st DCA 2001).
The cases M.A. relies upon are inappo-site, involving juveniles who were originally placed on probation or community control, in lieu of being committed. See B.S. v. State, 886 So.2d 1062 (Fla. 4th DCA 2004) (“the court stayed the [level 6] commitment and ‘in lieu of,’ placed appellant on juvenile probation.”); M.T. v. State, 805 So.2d 898 (Fla. 2d DCA 2001) (“appellant was adjudicated delinquent of robbery and was [not committed, but] placed on community control”); see also G.F. v. State, 927 So.2d 62 (Fla. 5th DCA 2006) (“G.F.’s post-commitment conditional release was subsequently changed to probation by agreement of the parties, nunc pro tunc to the date of sentencing”).

Affirmed.

WARNER, GROSS and TAYLOR, JJ., concur.

. The words "whichever comes first” were handwritten on the form.